No objections to this Report and Recommendation (the "R&R") have been received, and I therefore review it for clear error.  Finding no error, clear or otherwise, I adopt the R&R as the decision of the Court.  Respondent's motion to dismiss the Petition as time-barred is granted and the Petition is dismissed with prejudice.  The Clerk of Court is respectfully directed to terminate the pending motion, (ECF No. 11), and close the case.  Because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue.  See 28 U.S.C. 2252(c).

SO ORDERED.  8/13/24

*Cathy Seibel*
CATHY SEIBEL, U.S.D.J.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

SINCERE SMITH,

                                Petitioner,                        23 Civ. 7842 (CS) (AEK)

           -against-                        **REPORT AND RECOMMENDATION**

SUPERINTENDENT UHLER,

                                Respondent.
---------------------------------------------------------------X

**TO: THE HONORABLE CATHY SEIBEL, U.S.D.J.**

On August 28, 2023, Petitioner Sincere Smith ("Petitioner"), proceeding *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his judgment of conviction for assault in the second degree.  *See* ECF No. 1 ("Petition").[1] [2] Currently before the Court is Respondent's motion to dismiss the Petition pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that it is time-barred under 28 U.S.C. § 2244(d)(1).  ECF No. 11.

For the reasons that follow, I respectfully recommend that Respondent's motion to dismiss be GRANTED and that the Petition be dismissed with prejudice.

---

[1] Citations in this Report and Recommendation to the compilation of documents in the Petition are to the page numbers assigned by the Court's Electronic Case Filing ("ECF") system.

[2] The Petition indicates that Petitioner signed the document on August 28, 2023, Petition at 15, and the envelope in which the Petition was mailed is postmarked that same day, *id.* at 17. Pursuant to the prison mailbox rule, a habeas petition is deemed to have been filed as of the date it was given to prison officials for mailing. *See Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir. 2001). Accordingly, the Petition is deemed to have been filed on August 28, 2023, even though it was not received by the Court until August 31, 2023, *see* Petition at 17, and even though ECF No. 1—the entry on the Court's docket for the Petition—is dated August 31, 2023.

## BACKGROUND

Because the issue presented by the motion to dismiss is whether the Petition was timely filed, the Court recounts here only the procedural history, including the relevant dates, related to Petitioner's criminal proceedings.

On February 28, 2018, after a jury trial, Petitioner was found guilty of assault in the second degree. *See* ECF No. 12 (Affidavit of Shea Scanlon Lomma ("Lomma Aff.")) at 2. Petitioner was sentenced to seven years of imprisonment and three years of post-release supervision on August 28, 2018. *Id.* at 3; *see People v. Smith*, 2018 WL 8221364, at *1 (Sup. Ct. Westchester Cnty. 2018).

Petitioner filed a direct appeal to the Appellate Division, Second Department, and on February 16, 2022, the Appellate Division affirmed Petitioner's judgment of conviction. *People v. Smith*, 159 N.Y.S.3d 712 (2d Dep't 2022). On April 29, 2022, the New York Court of Appeals denied Petitioner's application for leave to appeal. *People v. Smith*, 38 N.Y.3d. 1010 (2022). Petitioner did not seek a writ of certiorari from the United States Supreme Court, *see* Petition at 3; Lomma Aff. at 4, and as of the date he filed the Petition, Petitioner had not sought any further state court relief.[3] As noted above, Petitioner filed the Petition on August 28, 2023. On October 25, 2023, Respondent filed the instant motion to dismiss the Petition as untimely.

---

[3] In his declaration in opposition to Respondent's motion to dismiss, which was executed on October 23, 2023, Petitioner stated that he intended to file a motion to vacate his judgment of conviction pursuant to Section 440.10 of the New York Criminal Procedure Law "within days." ECF No. 14 (Declaration of Sincere Smith ("Smith Decl.")) at 2, 4. In a subsequent letter to the Court that was received on January 2, 2024, Petitioner reported that his "motion is on the calendar in Westchester County" and that it "was assigned to Judge Anne E. Minihan"—the judge who presided over Petitioner's 2018 trial, *see* ECF No. 13-2 at 2—on December 14, 2023. ECF No. 15. The Court understands this to mean that Petitioner has now filed his Section 440.10 motion. For the reasons set forth below, however, the filing of a Section 440.10 motion after a federal habeas petition has been filed does not affect the analysis of whether the filing of the federal habeas petition was timely.

## DISCUSSION

**I.    Applicable Law**

"Habeas review is an extraordinary remedy." *Bousley v. United States*, 523 U.S. 614, 621 (1998) (citing *Reed v. Farley*, 512 U.S. 339, 354 (1994)). To be granted a writ of habeas corpus from a federal district court, a petitioner must fully and carefully comply with the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. Before a federal district court may review the merits of a state criminal judgment in a habeas corpus action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254. If a petitioner has met these threshold requirements, a federal district court may hear an application for a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

AEDPA imposes a one-year limitation period for the filing of a federal habeas petition. 28 U.S.C. § 2244(d)(1). This limitation period begins to run from the latest of four possible dates: (1) the date on which the judgment of conviction becomes final by the conclusion of direct review or the expiration of the time for seeking such review; (2) the date on which a government-created impediment to filing a habeas petition is removed; (3) the date on which the constitutional right asserted is initially recognized by the Supreme Court, if the right has been made retroactively applicable to cases on collateral review; or (4) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. *See* 28 U.S.C. § 2244(d)(1)(A)-(D).

Section 2244(d)(2) tolls the one-year limitation period for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the

3

pertinent judgment or claim is pending . . . ." 28 U.S.C. § 2244(d)(2). A state post-conviction or collateral review application that is filed after the statutory limitation period has expired, however, does not reset the one-year clock. *See Moise v. Fields*, No. 19-cv-11964 (VSB) (RWL), 2021 WL 5316133, at *5 (S.D.N.Y. Sept. 20, 2021), *adopted by*, 2021 WL 6133992 (S.D.N.Y. Dec. 29, 2021). [4] Thus, the tolling provision of Section 2244(d)(2) is applicable only if a petitioner's post-conviction motion was pending within the one-year limitation period for the filing of a federal habeas petition.

In "rare and exceptional circumstance[s]" the Court can equitably toll the AEDPA limitation period, allowing a petition filed outside of the one-year limitation period to be considered timely. *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (cleaned up). To be eligible for equitable tolling, a petitioner must show that (1) extraordinary circumstances prevented him or her from filing the petition on time, and (2) the petitioner acted with reasonable diligence throughout the period he or she seeks to toll. *Id.*; *see Holland v. Florida*, 560 U.S. 631, 649 (2010).

The Supreme Court also has held that a claim of actual innocence may provide an "equitable exception" to the AEDPA limitation period. *McQuiggin v. Perkins*, 569 U.S. 383, 386, 392-93 (2013). This exception creates a "gateway" to habeas review despite expiration of the statute of limitations and requires a petitioner to make the same showing of actual innocence necessary to overcome a procedural bar to habeas review that was articulated in *Schlup v. Delo*, 513 U.S. 298 (1995), and *House v. Bell*, 547 U.S. 518 (2006). *See McQuiggin*, 569 U.S. at 386.

---

[4] In accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009), and Local Civil Rule 7.2 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, copies of this case and other cases that are unpublished or only available by electronic database are being simultaneously mailed to the *pro se* Petitioner along with this Decision and Order.

Thus, "a claim of actual innocence must be both 'credible' and 'compelling.'" *Rivas v. Fischer*, 687 F.3d 514, 541 (2d Cir. 2012). To be "credible," an actual innocence claim "must be supported by 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Id.* (quoting *Schlup,* 513 U.S. at 324 and citing *House,* 547 U.S. at 537). For such a claim to be "compelling," "the petitioner must demonstrate that 'more likely than not, in light of the new evidence, no reasonable juror would find him [or her] guilty beyond a reasonable doubt—or to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.'" *Id.* (quoting *House*, 547 U.S. at 538).

## II.     Timeliness and Tolling

The record in this matter demonstrates that the Petition was not timely filed, and neither equitable tolling nor the equitable exception of actual innocence applies.

### A.     The Petition is Untimely

The applicable date from which to measure the one-year limitation period for the filing of a federal habeas petition is the date on which Petitioner's state court conviction became final "by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Here, the New York Court of Appeals denied Petitioner's application for leave to appeal the Appellate Division's denial of his direct appeal on April 29, 2022. *People v. Smith*, 38 N.Y.3d 1010 (2022). Because Petitioner did not file a petition for a writ of certiorari in the United States Supreme Court seeking review of the New York state court decision, his conviction became final on July 28, 2022, 90 days after the New York Court of Appeals issued its order denying his application for leave to appeal. *See McKinney v. Artuz*, 326 F. 3d 87, 96 (2d Cir. 2003). Petitioner therefore had until July 28, 2023—one year from the date his direct

appellate review was completed—to file his habeas petition, but he did not file the Petition until August 28, 2023, 31 days after the limitations period expired.

Even if Petitioner has now filed a motion to vacate his judgment of conviction pursuant to Section 440.10 of the New York Criminal Procedure Law, *see* Smith Decl. at 2, 4; ECF No. 15; footnote 3, *supra*, the late 2023 filing has no impact on the timeliness of Petitioner's federal habeas petition, because a state post-conviction or collateral review application filed after the statutory limitation period has expired does not reset the one-year clock. "In order to toll the statute of limitations, a state court collateral motion must be pending ***during*** the limitations period; a state court collateral action filed after the period has expired has no tolling effect." *Moise*, 2021 WL 5316133, at *5 (S.D.N.Y. Sept. 20, 2021) (emphasis in original).

Accordingly, the Petition is untimely and must be dismissed, unless there is some basis for either equitable tolling or an equitable exception.

### B. Petitioner is Not Entitled to Equitable Tolling

For equitable tolling to apply, a petitioner must show that (1) extraordinary circumstances prevented him or her from filing the petition on time, and (2) he or she acted with reasonable diligence throughout the period he or she seeks to toll. *Smith*, 208 F.3d at 17. "The word 'prevent' requires the petitioner to demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his [or her] filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000).

In his October 2023 submission, Petitioner maintains that he first sent a request to the Court "several months ago" to obtain "an application" in order to be able to file his habeas petition, and then sent a second "request for an application" on or about July 5, 2023. Smith

6

Decl. at 1; *see* Smith Decl. Ex. A (copy of Petitioner's July 5, 2023 letter to the Clerk of Court requesting "an application" for a habeas corpus petition). In the July 5, 2023 letter, Petitioner states that he "did not receive a response last time" and "do[es] not know if the court ever received a request." Smith Decl. Ex. A. Petitioner asserts that he received the "application" from the Court in response to this second request on August 7, 2023.[5] Smith Decl. at 1. In the Petition, Petitioner explains that he believes that he did not receive a response to the "much earlier" request to the Court "based upon the obvious mishandling of [his] mail by the Department of Corrections." Petition at 14.

Petitioner also contends that he was unable to obtain the transcripts from his state court criminal proceedings due to financial constraints. Smith Decl. at 2. Eventually, Petitioner "came to an agreement with the with the [] [Attorney General's] office" to discontinue a separate federal civil lawsuit in exchange for the transcripts. Smith Decl. at 2 and Ex. E-1. He again alleges that problems with the prison mail system led to delays in the transcripts being delivered. Smith Decl. at 2.

Neither of Petitioner's proffered explanations constitutes extraordinary circumstances that warrant equitable tolling. The Second Circuit has explained that "[a]s a general matter, [courts] set a high bar to deem circumstances sufficiently 'extraordinary' to warrant equitable tolling. Whether a circumstance is extraordinary is based not on how unusual the circumstance alleged to warrant tolling is among the universe of prisoners, but rather, how severe an obstacle it is for the prisoner endeavoring to comply the AEDPA's limitations period." *Dillon v. Conway*, 642 F.3d 358, 363 (2d Cir. 2011) (cleaned up). "It is exceedingly rare for courts in the Second

---

[5] Petitioner's declaration includes a cover sheet labeled as Exhibit B, with the title "Envelope Application Came in"; no envelope is actually included in the submission.

Circuit to find that extraordinary circumstances exist." *Hernandez v. Khahaifa*, No. 10-cv-6582 (KMK), 2013 WL 3984958, at *13 (S.D.N.Y. July 31, 2013) (cleaned up).

Even accepting as true Petitioner's assertion that irregularities in the delivery of mail during his incarceration may have contributed to a delay in receiving certain documentation that he requested from the Court, problems with the prison mail system are part of the "difficulties inherent to prison life," which "generally are not extraordinary circumstances for purposes of equitable tolling." *Syder v. United States*, No. 22-cv-9896 (NRB), 2023 WL 5935689, at *6 (S.D.N.Y. Sept. 11, 2023) (quotation marks omitted); *see United States v. Mejia*, No. 03-cr-1483 (DLC), 2010 WL 935446, at *2 (S.D.N.Y. Mar. 16, 2010) (finding that a prison "returning" a package, which delayed the inmate's receipt of legal papers for months, did not constitute extraordinary circumstances that would justify equitable tolling); *Hernandez*, 2013 WL 3984958, at *13 ("the everyday difficulties attendant in prison life, such as transfers between facilities, solitary confinement, lockdowns, restricted access to the law library, and an inability to secure court documents, do not by themselves qualify as extraordinary circumstances" (cleaned up)).

While "[t]he intentional confiscation of a prisoner's habeas corpus petition and related legal papers by a corrections office" has been found to be an extraordinary circumstance, *see Valverde*, 224 F.3d at 133, Petitioner makes no such allegation here. Rather, Petitioner asserts that there was "obvious mishandling of [the] mail," at the time he purportedly attempted to send his first letter to the Court to request an "application." Petition at 14. But even this allegation is inconsistent with other evidence in the record. Petitioner concedes that when he sent his second letter to the Court on July 5, 2023, he received a response from the Court within a reasonable period of time, which required both Petitioner's outgoing and incoming mail to be processed in a timely fashion. Much of Plaintiff's opposition to the motion addresses alleged mishandling of

8

other property—not mail irregularities—during the time he was in custody at Upstate Correctional Facility ("Upstate"). Specifically, Petitioner focuses on personal property that was stored by the prison for a period between mid-July and early August 2023. *See* Smith Decl. at 1 & Ex. C. This property, however, consisted not of incoming or outgoing mail, but rather items already in his possession on July 14, 2023, when they were packed up for storage in advance of his transport to a July 20, 2023, court appearance in the United States District Court for the Northern District of New York. *See* Smith Decl. at 1 & Exs. C-D. Notably, these issues allegedly occurred more than a week after Petitioner sent his second habeas "application" request on July 5, 2023, and well after he allegedly sent his first request months before. On August 2, 2023, Petitioner sent a letter to prison officials requesting information related to the packing and storing of his property, explaining that it had not yet been given back despite his having returned to Upstate from his court trip on July 27, 2023. *See* Smith Decl. at 1 & Ex. D. No mention is made of any incoming or outgoing mail being mishandled or withheld from him. *See id.*

Moreover, Petitioner did not exercise reasonable diligence in attempting to obtain what he believed to be the necessary form habeas petition from the Court. By Petitioner's own admission, his July 5, 2023 second request to the Court was sent "several months" after he did not receive any response to his initial request. *See* Smith Decl. at 1. Petitioner does not provide any explanation for his failure to take additional steps to follow up in a timelier manner. *See Brandon v. Graham*, No. 10-cv-9174 (VB), 2013 WL 2480246, at *5 (S.D.N.Y. June 7, 2013) (finding a lack of reasonable diligence where Petitioner failed to explain delay between filing application for leave to appeal and inquiring as to the status of the application).

Petitioner's inability to get the transcripts from his state court proceedings is likewise insufficient to show extraordinary circumstances for purposes of equitable tolling. Put simply,

9

"[f]ailure to obtain legal documents from one's state trial does not equitably toll the statutory period." *Lewis v. Walsh*, No. 03-cv-1932 (DC), 2003 WL 21729840, at *2 (S.D.N.Y. July 25, 2003); *see Moise*, 2021 WL 5316133, at *6 ("[T]he difficulties attendant on prison life, such as . . . an inability to secure court documents, do not by themselves qualify as extraordinary circumstances."). There is no indication here that prison officials deliberately withheld or otherwise deprived Petitioner of his state court documents. Indeed, Petitioner makes clear that he entered into an agreement with the Office of the Attorney General ("OAG") that allowed him to obtain his state court transcripts, but he did not sign this agreement until July 31, 2023, three days after the deadline to file his federal habeas petition. *See* Smith Decl. Ex. E-1. The agreement was countersigned by an OAG representative on August 7, 2023, after which the OAG sent the transcripts to Petitioner via overnight mail, and Petitioner received the documents later that month. *See* Smith Decl. at 2 & Ex. E-2. Even if there was some delay in Petitioner's receipt of the transcripts in August 2023, by the time Petitioner entered into the agreement with the OAG, it was already too late for him to have received the transcripts in time to have those documents available to him for purposes of filing a timely habeas petition.

Petitioner also has not shown reasonable diligence as it relates to his trial transcripts. "The diligence requirement at least requires that a prisoner act reasonably in accessing those resources that are available to him." *Samo v. Keyser*, 305 F. Supp. 3d 551, 561 (S.D.N.Y. 2018), *adopted by*, No. 17-cv-5043 (RJS), 2018 WL 4565143 (S.D.N.Y. Sept. 21, 2018). There is no indication that Plaintiff attempted to obtain copies of the state court transcripts before he entered into the August 2023 agreement with the OAG to resolve a different litigation. This belated effort is insufficient to establish that Petitioner acted with reasonable diligence for purposes of an entitlement to equitable estoppel.

C. **The Actual Innocence Equitable Exception Does Not Apply**

At no point in any of his submissions in opposition to Respondent's motion to dismiss does Petitioner suggest that he has pursued or intends to pursue a claim of actual innocence. Accordingly, the equitable exception of actual innocence does not apply here.

\* \* \* \* \* \* \* \* \* \*

In sum, because the Petition is untimely, and because Petitioner has not established that any kind of tolling of or exception to AEDPA's one-year statute of limitations applies, Respondent's motion should be granted, and the Petition should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Respondent's motion to dismiss (ECF No. 11) be GRANTED and that the Petition be dismissed with prejudice.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have 14 days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made by mail). A party may respond to another party's objections within 14 days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any responses to such objections, must be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Cathy Seibel, United District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the Honorable Andrew E. Krause at the same address.

Any request for an extension of time for filing objections or responses to objections must be directed to Judge Seibel, and not to the undersigned.

**Failure to file timely objections to this Report and Recommendation will result in a waiver of objections and will preclude appellate review.** See *Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Campbell*, 782 F.3d 93, 102 (2d Cir. 2015).

Dated: July 11, 2024
White Plains, New York

Respectfully submitted,

_____
ANDREW E. KRAUSE
United States Magistrate Judge

A copy of this Report and Recommendation has been mailed by Chambers to the *pro se* Petitioner at his address of record on the docket, which was last updated on June 3, 2024. *See* ECF No. 16. This address is the same address that is listed for Petitioner on the Department of Corrections and Community Supervision Incarcerated Lookup website. *See Incarcerated Lookup*, Department of Corrections and Community Supervision (Jul. 9, 2024), https://nysdoccslookup.doccs.ny.gov/, [https://perma.cc/XB7E-HJGR].